IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LANTA GRAHAM, et al.,

          Plaintiffs,

v.                                           CIVIL ACTION NO. 2:18-cv-00432

STAR USA FEDERAL CREDIT UNION,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Star USA Federal Credit Union's ("Star Credit Union") motion for judgment on the pleadings. (ECF No. 5.) For the reasons discussed more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Star Credit Union's motion.

*I. BACKGROUND*

In or about April 2014, Plaintiff Eula Russell ("Russell") purchased a vehicle from White Auto Sales in Summersville, West Virginia. (*See* ECF No. 1-1 at ¶ 5.) White Auto Sales arranged for Russell to receive financing for the vehicle from Star Credit Union. (*Id.* at ¶ 6.) Russell states that her father, Plaintiff Lanta Graham ("Graham"), was supposed to be a co-signer on the loan for the vehicle. (*See id.* at ¶¶ 6, 11.) Russell's application was denied, but Graham was approved, so the loan originated in Graham's name only. (*See* ECF No. 4 at 13–15 (Loan Agreement Attached to Answer).) However, Russell made the monthly payments and paid for and carried the insurance for the vehicle. (*See* ECF No. 1-1 at ¶ 9.)

On June 15, 2016, Star Credit Union sent Graham a Notice of Right to Cure which stated that the vehicle was in default and that the default needed to be cured by June 28, 2016. (*See* ECF No. 4 at 23 (Notice of Right to Cure to Graham Attached to Answer).) This notice also included the amount that needed to be tendered to cure the default. (*See id.*) Star Credit Union also sent Russell a Notice of Right to Cure, but that notice did not contain the amount of the deficiency. (*See id.* at 21 (Notice of Right to Cure to Russell Attached to Answer); *see also* ECF No. 1-1 at ¶ 15(a).) After receiving the notice, Russell attempted to make the June payment on the vehicle, but Star Credit Union refused to accept the payment. (*See* ECF No. 1-1 at ¶¶ 17–18.) Star Credit Union subsequently repossessed the vehicle in July 2016. (*See id.* at ¶ 18.)

The company that repossessed the vehicle for Star Credit Union informed Russell that she could cure the default on the loan before the car was sold if she contacted Star Credit Union. (*Id.* at ¶ 19.) Russell states that she contacted Star Credit Union who informed her that she needed to pay the full balance on the loan within ten days to regain possession of the vehicle or the vehicle would be sold. (*Id.* at ¶ 15(a)–(b).) Star Credit Union further informed Russell that if she did not regain possession and the vehicle was sold for less than what was owed, Russell would have to pay the difference. (*Id.* at ¶ 20(b).)

On August 11, 2016, Star Credit Union sent Graham a notice of its intent to sell the vehicle which informed Graham that he could regain possession of the vehicle by paying the full amount owed. (*Id.* at ¶ 21(a)–(b).) Graham was unable to pay the balance within the ten days. (*Id.* at ¶ 22.) Accordingly, on May 1, 2017, Star Credit Union notified Graham that the vehicle had been sold and, because it sold for less than what was owed, Graham needed to pay the difference. (*Id.* at ¶ 24.)

Russell and Graham (collectively "Plaintiffs") filed this action on January 18, 2018 in the Circuit Court of Kanawha County, West Virginia, against Star Credit Union alleging the following causes of action: failure to provide notice to co-signer (Count I); violation of the Truth-in-Lending Act ("TILA") (Count II); illegal debt collection (Count III); and commercially unreasonable disposition of an automobile (Count IV). (*See* ECF No. 1-1.) Star Credit Union timely removed this action to this Court invoking the Court's federal question jurisdiction on March 14, 2018. (ECF No. 1.) On April 9, 2018, Star Credit Union filed the present motion for judgment on the pleadings. (ECF No. 5.) Plaintiffs timely responded to Star Credit Union's motion, (ECF No. 7), and Star Credit Union timely replied. (ECF No. 8.) As such, Star Credit Union's motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court applies the same standard as when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012). Therefore, a motion for judgment on the pleadings should only be granted if, after accepting all the well-pleaded allegations in the complaint and construing them in the light most favorable to the non-moving party, it appears certain that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. *Drager*, 441 F.3d at 474. "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Id.* However, the Court is not obliged to accept allegations that "represent unwarranted inferences, unreasonable conclusions, or arguments," or that "contradict matters properly subject to judicial notice or by exhibit."

*Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006) (internal quotation marks omitted). Ultimately, "[t]he court may grant a motion for judgment on the pleadings and dismiss the plaintiff's claims with prejudice when the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Buie v. BFGoodrich Textile Chems.*, Inc., 60 F. Supp. 2d 522, 522 (W.D.N.C. 1999).

"In resolving a motion for judgment on the pleadings, the Court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the Court may take judicial notice." *Brown v. Econ. Premier Assurance Co.*, No. 1:17-cv-00206-MOC-DLH, 2018 WL 1594669, at *2 (W.D.N.C. Apr. 2, 2018) (citations omitted); *see also Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Pursuant to Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." However, if evidence outside of the pleadings is tendered to and accepted by the Court, the motion for judgment on the pleadings is converted into a motion for summary judgment under Rule 56. *A. S. Abell Co. v. Baltimore Typographical Union*, 338 F.2d 190, 193 (4th Cir. 1964); Fed. R. Civ. P. 12(d). Here, the Court will construe the present motion solely as a motion for judgment on the pleadings as the documents to be considered by the Court—the Complaint and the Answer—and their attached exhibits are all part of the pleadings. *See* Fed. R. Civ. P. 7(a); *see also Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988); *Webb Law Firm, P.L.L.C. v. Web Law Firm, P.C.*, No. 2:13-cv-21470, 2014 WL 4795159, at *1 n.3 (S.D. W. Va. Sept. 25, 2014).

### III. DISCUSSION

In its motion for judgment on the pleadings, Star Credit Union argues that Plaintiffs fail to state a plausible claim for relief under each count of the Complaint. (*See* ECF No. 6 at 3–11.) The

4

Court will address Star Credit Union's arguments as to each count separately beginning with Count I.

    A. *Failure to Provide Notice to Co-signer (Count I)*

In Count I, Plaintiffs allege that Star Credit Union failed to provide Graham, who Plaintiffs allege was a co-signer on the loan, with a separate notice explaining his liability in the event of default in violation of § 46A-2-104 of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). (*See* ECF No. 1-1 at ¶ 31.) In its motion, Star Credit Union argues that Plaintiffs cannot state a plausible claim for relief as to this count because there is no co-signer on the loan. (*See* ECF No. 6 at 3.)

    West Virginia Code § 46A-2-104(a) provides the following:

> (a) No person shall be held liable as cosigner, or be charged with personal liability for payment in a consumer credit sale, consumer lease or consumer loan unless that person, in addition to and before signing any instrument evidencing the transaction, signs and receives a separate notice which clearly explains his liability in the event of default by the consumer and also receives a copy of any disclosure required by the "Federal Consumer Credit Protection Act."

W. Va. Code § 46A-2-104(a). The statute further details what must be included in the notice. Additionally, the statute defines a co-signer as the following:

> a natural person who assumes liability for the obligation on a consumer credit sale or consumer loan without receiving goods, services or money in return for the obligation or, in the case of a revolving charge account or revolving loan account of a consumer, without receiving the contractual right to obtain extensions of credit under the account. The term cosigner includes any person whose signature is requested as a condition to granting credit to a consumer or as a condition for forbearance on collection of a consumer's obligation that is in default. . . . A person who meets the definition in this paragraph is a "cosigner" whether or not the person is designated as such on the credit obligation.

W. Va. Code § 46A-1-102(16).

Here, it is undisputed that there is no signature on the loan other than Graham's. (*See* ECF No. 4 at 13–15.) The loan originated solely in Graham's name. (*See* ECF No. 6 at 4; ECF No. 7 at 6.) There is no other signature on the loan. (*See* ECF No. 4 at 13–15.) Thus, it is evident that Graham is not a co-signer on the loan. However, Plaintiffs attempt to circumvent this fact by asserting that, although the loan originated in Graham's name, Graham is still by definition a co-signer because he did not use the car. (*See* ECF No. 7 at 6.) The Court does not find Plaintiffs' argument persuasive.

As stated above, Graham is the sole singer and borrower on the loan. It would be illogical to find that Graham is the sole borrower and a co-signer on the same loan. Furthermore, the statute clearly assumes that a co-signer is an additional, separate signer on the loan. *See* § 46A-1-102(16) (stating that a cosigner "includes any person whose signature is requested as a condition to granting credit to a consumer or as a condition for forbearance on collection of a consumer's obligation that is in default" and thus assuming that the co-signer is a separate person than the consumer). As there is no co-signer on the loan, § 46A-2-104(a) has no application here. This claim is utterly frivolous. Accordingly, Plaintiffs cannot state a plausible claim for relief under Count I of their Complaint.

B. *Violation of the TILA (Count II)*

In Count II, Plaintiffs allege that Star Credit Union violated the TILA by failing "to provide a copy of all required disclosures clearly and conspicuously in writing in a form the consumer can keep prior to consummation of the transaction." (ECF No. 1-1 at ¶ 33.) In its motion, Star Credit Union contends that the statute of limitations has run on this claim.

15 U.S.C. § 1640(e) establishes the following statute of limitations for actions brought under the TILA:

> Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan.

15 U.S.C. § 1640(e); *see also McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354 (4th Cir. 2016). Here, it is uncontested that Graham signed the loan agreement on May 9, 2014, (*see* ECF No. 4 at 13–15), which would have been the latest date on which these disclosures could have been provided as it was the consummation of the transaction. *See* 12 C.F.R § 226.2(a)(13). However, Plaintiffs did not file the present action until January 18, 2018, (*see* ECF No. 1-1 at 2), well outside of the one-year statute of limitations.

Plaintiffs do not dispute that the one-year statute of limitations began to run on May 9, 2014. Instead, Plaintiffs argue that § 1640(h) allowance of time-barred penalties to be asserted as a set-off in a collection action serves as an exception to the statute of limitations. (*See* ECF No. 7 at 9.) Plaintiffs contend that this alleged exception applies here and therefore their claim is not time-barred. (*See id.*)

> Section 1640 provides the following:
>
> (h)  Offset from amount owed to creditor or assignee; rights of defaulting consumer
>
> A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this subchapter.

7

15 U.S.C. § 1640(h). Plaintiffs emphasize the last sentence of this subsection in making their argument. (*See* ECF No. 7 at 9.)

A plain reading of this subsection does not indicate that it serves as an exception to the one-year statute of limitations provided in § 1640(e). This subsection explicitly pertains to consumer claims brought as a set-off in collection actions, which the present action is not. *See MBank Fort Worth, N.A. v. Trans Meridian, Inc.*, 820 F.2d 716, n.9 (5th Cir. 1987) (Noting that § 1640(h) exists to allow plaintiffs to assert a violation of this section as a counterclaim or as a defense to a creditor's claim after the consumer's debt has been reduced to judgment); *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, n.12 (6th Cir. 1980) ("A setoff is specifically provided for in 15 U.S.C. § 1640(h) but only if the consumer's debt has been reduced to judgment." (citing *Plant v. Blazer Fin. Servs. Inc.*, 598 F.2d 1357 (5th Cir. 1979))); *see also* 47 C.J.S. Interest & Usury § 540 (2018) ("TILA provides that, except as otherwise provided by state law, the limitations provision in TILA does not bar a person from asserting a violation of the Act in an action to collect the debt which was brought more than a year after the occurrence of the violation as a matter of defense by recoupment or setoff in such action.").

Furthermore, the Court has not found, nor have Plaintiffs directed the Court to, any authority that states that this subsection, including the last sentence that Plaintiffs emphasize, establishes an exception to the one-year statute of limitations provided in § 1640(e). *See, e.g.*, *Matter of Coxson*, 43 F.3d 189, 194 (5th Cir. 1995) (holding that because chapter 13 debtors, who were plaintiffs in adversary proceedings, raised their TILA claim defensively against a secured creditor, the TILA claim was not barred by the one-year statute of limitations).

The only case that Plaintiffs direct the Court to in support of their position is from the Supreme Court of Oklahoma, in which that court held that the one-year statute of limitations does not apply to defenses or counterclaims in a collection action. *See Stephens v. Household Fin. Corp.*, 566 P.2d 1163 (Okla. 1977). However, *Stephens* is not applicable here as Plaintiffs are not asserting TILA violations as a counterclaim or defense to a collection action. Thus, 15 U.S.C. § 1640(h) does not apply here. This claim is likewise clearly frivolous.

Having found no applicable exception to the statute of limitations provided in § 1640(e), the Court **FINDS** that Plaintiffs were required to file their TILA claim within the one-year statute of limitations. As Plaintiffs filed their TILA claim almost four years later, Plaintiffs' claim is time barred. Accordingly, Plaintiffs cannot state a plausible claim for relief as to Count II.

C. *Illegal Debt Collection (Count III)*

In Count III, Plaintiffs allege that Star Credit Union used unfair or unconscionable means to repossess the vehicle in violation of West Virginia Code § 46A-2-128. (*See* ECF No. 1-1 at ¶ 35.) In its motion, Star Credit Union argues that the pleaded facts demonstrate that it was justified in repossessing the vehicle. (*See* ECF No. 6 at 5.)

West Virginia Code § 46A-2-128 provides, in pertinent part, that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128. The statute then goes on to list conduct that is deemed to be violative of this section, but states that this list does not limit "the general application of the foregoing sections." *See id.* at §§ 128(a)–(f). However, Plaintiffs do not direct the Court to any of the enumerated violative conduct that Star Credit Union violated. Instead, in their response, Plaintiffs argue that several of the factual allegations in their Complaint establish sufficient claims of illegal debt collection under this and other

9

sections of the WVCCPA. (*See* ECF No. 7 at 9–11.) The Court will address each of Plaintiffs' allegations under this count separately.

### 1. Insufficient Notice of Right to Cure

In their Complaint, Plaintiffs seemingly argue that Star Credit Union sent a Notice of Right to Cure to Russell that did not contain the amount of the alleged deficiency. (*See* ECF No. 1-1 at ¶ 15.) In their response to Star Credit Union's motion, Plaintiffs argue that because they allege that Russell was the intended obligor under the loan, she was thus entitled to a Notice of Right to Cure that meets all the requirements in § 46A-2-106. (*See* ECF No. 7 at 9.) Plaintiffs further argue that there is an issue of fact as to whether Russell was a consumer under the WVCCPA. (*See id.* at 10.)

"[I]n the context of written debt instruments, the definition of 'consumer' in [§] 46A-1-102(12) only includes parties to the agreement who sign the instrument and correspondingly incur the debt . . . . Section 46A–2–122(a) defines a 'consumer' as 'any natural person obligated or allegedly obligated to pay any debt.'" *See Hanshaw v. Wells Fargo Bank, N.A.*, No. 2:14–cv–28042, 2015 WL 5345439, at *13, 14 (S.D. W. Va. Sept. 11, 2015). Here, as discussed more fully above, Russell did not sign the loan and was therefore never personally obligated to pay the loan. *See supra* Part III.A. As such, Russell was not entitled to a Notice of Right to Cure that met the requirements of § 46A-2-106. Thus, even if the Court construed this allegation as an illegal debt collection claim under Count III, it fails as a matter of law. *See McNeely*, 115 F. Supp. 3d at 786.

### 2. Returned Payments

Second, Plaintiffs allege that "they believed the loan was current, due for the June payment" and that Russell attempted to make the June payment, which was refused. (*See* ECF No. 7 at 10 (citing ECF No. 1-1 at ¶¶ 15–18).) After refusing the payment, Star Credit Union subsequently

repossessed the vehicle. (*See* ECF No. 7 at 10.) Plaintiffs argue that this allegation sufficiently makes a claim for unconscionable or unfair debt collection under the WVCCPA. (*See id.*)

Section 46A-2-115 of the WVCCPA provides the following:

> All amounts paid to a creditor arising out of any consumer credit sale or consumer loan shall be credited upon receipt against payments due . . . . Provided, however, that partial amounts received during the period set forth in subdivision (3) subsection (b) of this section do not create an automatic duty to reinstate and may be returned by the creditor.

§ 46A-2-115(c). The period specified in subdivision (3) subsection (b) is "the last day allowed for cure of the consumer's default pursuant to section one hundred six, of this article and before the consumer reinstates the consumer loan or otherwise cures the default."

Therefore, if a payment is returned before the last day allowed for cure, that returned payment can serve as a basis for a plausible claim under § 46A-2-115(c). *See Kesling v. Countrywide Home Loans, Inc.*, No. 2:09-cv-588, 2011 WL 227637, at *3 (S.D. W. Va. Jan. 24, 2011). Furthermore, a plaintiff is not obligated to plead that the payment was made during a period when the creditor was obligated to accept the payment. *See Coleman v. JP Morgan Chase Bank, N.A.*, No. 3:14–cv-0183, 2014 WL 1871726, at *7 (S.D. W. Va. May 8, 2014).

Here, Plaintiffs' allegations of the returned payment may state a plausible claim under § 48A-2-115. However, Plaintiffs do not plead a violation of § 48A-2-115 in Count III or anywhere in the Complaint. Instead, Plaintiffs only cite to § 46A-2-128. This Court is not aware of, nor have Plaintiffs provided, any authority that states that a claim for relief under § 48A-2-115 would also be a claim for relief under § 46A-2-128. Furthermore, in the cases in which a plaintiff alleged returned payments and a violation § 46A-2-128 in the same action, the plaintiff always alleged the violations in separate counts and always cited to § 46A-2-115(c). *See, e.g.*, *Ballenger v. Nat'l City Mortg., Inc.*,

11

No. 1:14-cv-81, 2015 WL 5062770, at *13–15 (N.D. W. Va. Aug. 26, 2015); *McNeely v. Wells Fargo Bank, N.A.*, No. 2:13-cv-25114, 2014 WL 7005598, at *2, 8 (S.D. W. Va. Dec. 10, 2014); *Coleman*, 2014 WL 1871726, at *7–8. Accordingly, Plaintiffs cannot state a plausible claim for relief for returned payments under § 46A-2-128, which serves the basis for Count III.

### 3. Insufficient Notice of Intent to Sell

Third, Plaintiffs allege that Star Credit Union ultimately disposed of the vehicle on a date later than the date Star Credit Union specified in its notice of intent to sell. (*See* ECF No. 7 at 10 (citing ECF No. 1-1 at ¶ 24).) Plaintiffs further allege that Star Credit Union never notified Plaintiffs "of the time, place, or type of sale for the ultimate disposition of the vehicle, and thereby interfered with Plaintiffs' right to redeem at any time prior to sale." (*See id.*) Plaintiffs argue that these allegations make a claim for illegal debt collection under the WVCCPA. (*See* ECF No. 7 at 10.)

The WVCCPA defines debt collection as, "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." § 46A-2-122(c). Therefore, even assuming that Star Credit Union did not provide Plaintiffs with adequate notice about the ultimate disposition of the vehicle, this failure was not an attempt to solicit or collect a claim from Plaintiffs. *See, e.g.*, *Elkins v. Diversified Collection Servs., Inc.*, No. 5:13–cv–00927, 2013 WL 3754830, at *5 (S.D W. Va. July 15, 2013) (defining debt collection under the WVCCAP as "an 'action, conduct or practice' whereby the debt collector is 'solicit[ing]' a 'claim' for collection or collecting on the claim owed or due or allegedly owed or due"). Accordingly, even if the Court construes this allegation as falling under Count III, it does not state a plausible claim for illegal debt collection.

### 4. Misrepresentations

12

Lastly, Plaintiffs allege that Star Credit Union made "several misrepresentations regarding the status of the claim" in violation of § 46A-2-127(d). (*See* ECF No. 7 at 10 (citing ECF No. 1-1 at ¶ 27).) However, Plaintiffs do not provide any specific factual allegations regarding Star Credit Union's misrepresentations in the Complaint. Neither do Plaintiffs direct the Court to any factual allegations contained in the Complaint that relate to this claim in their response to Star Credit Union's motion. The mere allegation that misrepresentations occurred, without any additional factual allegations, is insufficient to support a claim for a violation of the WVCCPA. *See, e.g.*, *Williams v. PNC Bank*, No. 2:09-cv-0953, 2010 WL 11619634, at *4 (S.D. W. Va. July 13, 2010) (finding that the plaintiff's allegation that one of the defendants misrepresented the amount of claim against the plaintiff, without any specific factual allegations about these misrepresentations or any factual allegations attributing these abuses to that defendant, was not sufficient to support an illegal debt collection claim against that defendant). Accordingly, even if the Court construed this allegation of misrepresentation as falling under Count III, it does not state a plausible claim for relief.

D. *Commercially Unreasonable Disposition of An Automobile (Count IV)*

In Count IV, Plaintiffs allege that Star Credit Union unreasonably dispossessed the vehicle in violation of West Virginia Code § 46-9-610 when Star Credit Union sold the repossessed vehicle for "significantly less than the fair market value of the vehicle at the time." (*See* ECF No. 1-1 at ¶ 37.) Specifically, Plaintiffs allege that, as of April 2017, the "Kelly Bluebook value of the [v]ehicle as of April was $5,000" but that Star Credit Union sold the vehicle for $2,375, a price, Plaintiffs argue, was far less than fair market value. (*See id.* at ¶ 26.) Plaintiffs further allege that Star Credit Union failed to provide Plaintiffs with the notification of the ultimate disposition of the vehicle as required

under West Virginia Code § 46-9-611, which Plaintiffs argue interfered with their right to redeem. (*See id.* at ¶ 38.)

West Virginia Code § 46-9-610 provides that "[a]fter default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition." W. Va. Code § 46-9-610(a). However, before disposition of the collateral under § 46-9-610, the secured party must send the debtor and any secondary obligor a notification of disposition. § 46-9-611(b)–(c). Furthermore, the statute provides that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." § 46-9-610(b). A disposition of collateral is commercially reasonable if the disposition is made: "(1) [i]n the usual manner on any recognized market; (2) [a]t the price current in any recognized market at the time of the disposition; or (3) [o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." § 46-9-627(b).

Here, Plaintiffs first allege that Star Credit Union disposed of the vehicle for less than the Kelly Bluebook value, which would be the value in a recognized market. Star Credit Union asserts that, notwithstanding the Kelly Bluebook Value of the vehicle, an inspection of the vehicle revealed several deficiencies that, in conjunction with the amount of mileage on the vehicle at the time of sale, lowered the value of the vehicle. Whether this new sales price and the circumstances surrounding the sale were reasonable is better left determined after discovery has been conducted in this matter. *See, e.g.*, *Richard Watson Fin., L.L.C. v. Crum*, No. 2:15-cv-16577, 2017 WL 29681, at *2 (S.D. W. Va. Jan. 3, 2017) (finding that plaintiffs' disposition of collateral was reasonable after reviewing multiple filings that showed that plaintiff complied with the statute).

However, Plaintiffs cannot state a plausible claim for commercially unreasonable disposition of collateral under their second allegation that Star Credit Union failed to issue a second notice of disposition of collateral for when the vehicle was ultimately sold. The Court is not aware of, nor have the parties directed the Court to any binding legal authority that requires a creditor to send a second notice of disposition of collateral if the collateral sells on a later date. Accordingly, the Court **DENIES IN PART** Star Credit Union's motion for judgment on the pleadings as to Count IV insofar as it relates to Plaintiffs' allegations that Star Credit Union's sale price of the vehicle was unreasonable.

E. *Russell's Standing*

Lastly, in their motion, Star Credit Union argues that Russell does not have standing in this action. (*See* ECF No. 6 at 9.) As discussed more fully above, the Court agrees that Russell is not personally obligated on the loan and thus not a consumer under the WVCCPA. *See supra* Part III.A, C. As such, Russell does not have standing to bring any of the claims asserted in the Complaint. *See McNeely v. Wells Fargo Bank, N.A.*, 115 F. Supp. 3d 779, 785–86 (S.D. W. Va. 2015) (finding that because plaintiffs were not personally obligated under the loan, he was not a "consumer" under the WVCCPA and thus lacked standing to sue). Accordingly, the Court **DISMISSES** Russell as a Plaintiff in this action

IV. CONCLUSION

For the reasons discussed herein, the Court **GRANTS IN PART** Star Credit Union's motion for judgment on the pleadings insofar as it requests dismissal of Russell for lack of standing and insofar as it requests dismissal of Counts I, II, and III in their entirety and Count IV insofar as it pertains to Plaintiffs' claim regarding Star Credit Union's failure to issue a second notice of

disposition of collateral.  The Court **DENIES IN PART** the motion insofar as requests dismissal of Count IV insofar as it relates to Plaintiffs' claim regarding the sale price of the vehicle.  The Court further directs the Clerk to remove Russell as a Plaintiff in this action.  Therefore, this matter will proceed by Graham against Star Credit Union on Count IV insofar as it pertains to the sale price of the vehicle.

Furthermore, the Court is considering imposing sanctions on Plaintiffs' counsel for bringing Counts I and II of the Complaint as these claims are frivolous.  However, before imposing sanctions, the Court will consider submissions from the parties on the subject.  Any submissions by the parties regarding the appropriateness of sanctions shall be submitted no later than October 19, 2018.  After reviewing the parties' submissions, the Court may schedule a hearing.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 4, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE