IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LANTA GRAHAM, et al.,

          Plaintiffs,

v.  CIVIL ACTION NO. 2:18-cv-00432

STAR USA FEDERAL CREDIT UNION,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion to Reconsider.[1] (ECF No. 30.) For the reasons discussed more fully below, the Court **DENIES** the motion. (ECF No. 30.)

---

[1] In its Memorandum Opinion and Order on Star Credit Union's Motion for Judgment on the Pleadings, the Court requested submissions from the parties on the appropriateness of sanctions. (*See* ECF No. 23 at 16.) Defendant Star USA Federal Credit Union ("Star Credit Union") subsequently filed a Motion for Sanctions, (ECF No. 26), to which Plaintiff Graham timely responded. (ECF No. 28.) Thus, that motion is fully briefed and ripe for adjudication.

    As relevant here, Rule 11(b) requires an "unrepresented party" to certify that a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1), (2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction" on the offending party. Rule 11(c)(1). In the Fourth Circuit, "[a]n assertion of law violates Rule 11(b)(2) when, applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998).

    After reviewing the parties' submissions, Court declines to sanction Graham. Graham has presented enough evidence through the legislative history of the West Virginia Consumer Credit and Protection Act and case law to demonstrate that he had an objectively reasonable basis to bring these causes of action. (*See* ECF No. 28 at 3–9.) Accordingly, the Court **DENIES** Star Credit Union's Motion for Sanctions. (ECF No. 26.)

1

I.  BACKGROUND

In or about April 2014, Plaintiff's daughter, Eula Russell ("Russell") sought to purchase a 2012 Chevrolet Sonic from White Auto Sales in Summersville, West Virginia. (*See* ECF No. 1-1 at 2–3, ¶¶ 5–11 (Compl.).)  White Auto Sales arranged for Russell to receive financing for the vehicle from Defendant Star USA Federal Credit Union ("Star Credit Union"), with her father Plainiff Lanta Graham ("Graham") acting as a co-signer. (*Id.* at 3, ¶ 6.)  However, the car loan originated in Graham's name only. (*See* ECF No. 4 at 13–15 (Loan Agreement Attached to Answer).)  Nevertheless, Graham and Russell state that Russell made the monthly payments on the vehicle and paid for and carried the insurance for the vehicle. (*See* ECF No. 1-1 at 3, ¶¶ 9–10.)

The vehicle was subsequently repossessed in July 2016 and ultimately sold in April 2017.[2] (*See id.* at 3, 5 ¶¶ 15, 24.)  On January 18, 2018, Russell and Graham filed this action in the Circuit Court of Kanawha County, West Virginia, against Star Credit Union alleging the following causes of action: failure to provide notice to co-signer (Count I); violation of the Truth-in-Lending Act ("TILA") (Count II); illegal debt collection (Count III); and commercially unreasonable disposition of an automobile (Count IV). (*See* ECF No. 1-1.)  On March 14, 2018, Star Credit Union timely removed this action to this Court invoking the Court's federal question jurisdiction. (ECF No. 1.)

On April 9, 2018, Star Credit Union filed a motion for judgment on the pleadings. (ECF No. 5.)  In a Memorandum Opinion and Order dated October 5, 2018, this Court granted in part and denied in part the motion. (ECF No. 23.)  Specifically, the Court granted the motion

---

[2] A more detailed factual background of this case is set forth in this Court's Memorandum Opinion and Order regarding the motion for judgment on the pleadings. (*See* ECF No. 23.)  Thus, that discussion need not be repeated here at length.

insofar as it requested dismissal of Russell as a plaintiff for lack of standing, dismissal of Counts I, II, and III in their entirety, and dismissal of Count IV insofar as it pertained to the failure to issue a second notice of disposition of collateral claim. (*See id.* at 15–16.) The Court further denied in part the motion insofar as it requested dismissal of Count IV's allegations pertaining to the price Star Credit Union sold the vehicle for. (*See id.* at 16.) On October 24, 2018, Graham filed the present motion to reconsider the portion of the Court's ruling dismissing Count I of the Complaint. (ECF No. 30.) Star Credit Union timely responded to the motion, (ECF No. 34), and Graham timely replied. (ECF No. 35.) As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure governs reconsideration of interlocutory orders and opinions. *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991) (finding that the district court correctly considered a motion for reconsideration "of a prior interlocutory order" under Rule 54(b)). The Court's October 5, 2018 Memorandum Opinion and Order was an interlocutory order, as it did not resolve all claims against all parties. *See, e.g.*, *Saint Annes Dev. Co. v. Trabich*, 443 Fed. App'x 829, 832 (4th Cir. 2011) ("[T]he district court's summary judgment order, which did not resolve all claims against all parties, was interlocutory and thus subject to revision at any time." (citation omitted)).

This Court possesses "broad[] flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphasis deleted) (citing *Am. Canoe Ass'n*, 326 F.3d at 514–15; *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). This Court

"may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id.* (alteration and internal quotation marks omitted); *see id.* ("The law-of-the-case doctrine provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to [Federal Rule of Civil Procedure] 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id.* (internal quotation marks omitted); *see Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) ("A Rule 59(e) motion may only be granted in three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." (internal quotation marks omitted)).

### III. DISCUSSION

In his motion to reconsider, Graham requests that the Court reconsider its dismissal of Count I of the Complaint in order to correct a clear error of law. (*See* ECF No. 31 at 1–2.) Specifically, Graham argues that the legislative history of the West Virginia Consumer Credit and Protection Act ("WVCCPA") requires the Court to look beyond the denomination of the parties on the loan agreement and find that Graham was a co-signer under the WVCCPA, thus rendering Count I an appropriate claim for violation of the co-signer statute. (*See id.*) Star

4

Credit Union, however, argues that the Court correctly found that Graham was not a co-signer as legislative history is not binding legal authority. (*See* ECF No. 34 at 2–3.)

In Count I of the Complaint, Graham and Russell allege that that Star Credit Union failed to provide Graham, whom Graham and Russell allege was a co-signer on the loan, with a separate notice explaining his liability in the event of default in violation of § 46A-2-104 of the WVCCPA. (*See* ECF No. 1-1 at ¶ 31.) In its motion for judgment on the pleadings, Star Credit Union argued, and the Court agreed, that Graham and Russell could not state a plausible claim for relief as to this count because there is no co-signer on the loan. (*See* ECF No. 6 at 3; ECF No. 23 at 5–6.)

As stated in the Court's previous opinion, West Virginia Code § 46A-2-104(a) provides the following:

> (a) No person shall be held liable as cosigner, or be charged with personal liability for payment in a consumer credit sale, consumer lease or consumer loan unless that person, in addition to and before signing any instrument evidencing the transaction, signs and receives a separate notice which clearly explains his liability in the event of default by the consumer and also receives a copy of any disclosure required by the "Federal Consumer Credit Protection Act."

W. Va. Code § 46A-2-104(a). The statute further defines a co-signer as the following:

> a natural person who assumes liability for the obligation on a consumer credit sale or consumer loan without receiving goods, services or money in return for the obligation or, in the case of a revolving charge account or revolving loan account of a consumer, without receiving the contractual right to obtain extensions of credit under the account. The term cosigner includes any person whose signature is requested as a condition to granting credit to a consumer or as a condition for forbearance on collection of a consumer's obligation that is in default. . . . A person who meets the definition in this paragraph is a "cosigner" whether or not the person is designated as such on the credit obligation.

W. Va. Code § 46A-1-102(16).

Here, there is no other signature on the vehicle loan other than Graham's. Thus, the Court found that Graham could not have been a co-signer on the loan. (*See* ECF No. 4 at 13–15.) Graham, however, argues that the Court should look beyond how Graham is designated on the loan document and instead at the facts surrounding the purchase of the vehicle. Specifically, Graham asserts that the facts in the instant case illustrate the exact type of predatory sales practice that the West Virginia Legislature was trying to prevent—where the intended co-signer is the only one listed on the loan document. (*See* ECF No. 31 at 6–7.)

Graham largely bases his argument on the legislative history of the WVCCPA. However, this legislative history is not binding legal authority. *See United States v. Hatcher*, 56 F.3d 222, 226 (4th Cir. 2009) ("As a general rule, 'when the terms of a statute are clear, its language is conclusive and courts are not free to replace . . . [that clear language] with an unenacted legislative intent.'" (quoting *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)). Additionally, Graham has not argued that the meaning of the statute is ambiguous so that the Court would be pursuaded to look beyond the clear language of the WVCCPA and to the legislative history. *See id.* Further, while the statute does state that an individual can be a co-signer even if he or she is not designated as such on the loan document, that sentence does not justify a finding, as would result here were the Court to follow Graham's reasoning, that there is no principal on a credit document, only a co-signer. Instead, that provision more logically applies to instances where there is more than one signatory on a credit obligation and one of those signatories is incorrectly labled as a borrower instead of a co-signer.

Lastly, the Court is unaware of, nor has either party directed the Court to, any binding legal authority that allows for the designation of an individual as a co-signer under the

6

WVCCPA where, like here, the individual is the sole signatory on the consumer loan. The only legal authority that Graham directs the Court to in support of his contention does not stand for the proposition that an individual can be a co-signer under the circumstances present in this case. *See Boster Life Well Fin., Inc.*, No. 2:17-cv-3857, 2018 WL 1582725, at *1 (S.D. W. Va. Mar. 20, 2018) (quoting the definition of co-signer as provided in the WVCCPA and finding that the plaintiff was not a co-signer under the definition because plaintiff was personally obligated to repay the loan as a principal or a co-signer). (*See also* ECF No. 35 at 3.)

### IV. CONCLUSION

For the reasons discussed more fully above, the Court **DENIES** Graham's Motion to Reconsider. (ECF No. 30.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 14, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE